IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| William Baker,<br><br>                     Plaintiff,<br><br>vs.<br><br>Dr. Stacy Smith and Warden Wallace,<br><br>                     Defendants. | Civil Action No. 6:22-cv-2073-JD-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion for summary judgment (doc. 98). The plaintiff, a former state prisoner proceeding *pro se*, seeks relief pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d)(D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Section 1983 and submit findings and recommendations to the district court.

## BACKGROUND

The plaintiff filed his original complaint in this action on June 30, 2022, while he was a state prisoner in the custody of the South Carolina Department of Corrections ("SCDC") housed at MacDougall Correctional Institution ("MacDougall") (doc. 1). His complaint and amended complaint regard an alleged injury he suffered while he was incarcerated at Kirkland Correctional Institution ("Kirkland") (*id*. at 6-10; doc. 23). In his initial complaint, the plaintiff alleged that on September 30, 2021, he fell while climbing into his bed, which was the top bed of three, and injured his hand, neck, and shoulder (doc. 1 at 6-7). He alleged that when he "got to medical that day, Doctor Smith . . . had the Nurse x-ray [his] hand side-ways one time [and] ordered pillls for [him] and sent [him] back" (*id.* at 7). He alleged that ten months later, at the time of the filing of his initial complaint in June 2022,

he was still in pain and could not use his hand or shoulder (*id.*). The plaintiff further alleged that Warden Wallace "knew the beds [were] being stack[ed] three high and most of them with no ladders on the beds" (*id.* at 5). In his amended complaint filed on September 1, 2022, the plaintiff alleged that he did not receive medical treatment for the fall until June 2022 when he had an x-ray, steroid shot, and "exercise sheet" (doc. 23-1 at 2-3; doc. 23 at 10). The plaintiff alleged that the nurses at that time stated they "found no breakage and pretty much wrote [him] off" (doc. 23-1 at 2). The plaintiff alleged that because of the defendants' actions he is permanently disabled and that he suffered a broken hand and "required resetting of shoulder and neck brace and reset hand" (doc. 23 at 6, 10).

On September 2, 2022, the undersigned filed a report and recommendation recommending that the district court dismiss the plaintiff's amended complaint with prejudice, without leave to further amend, and without issuance and service of process (doc. 28). The report addressed three potential claims gleaned from the plaintiff's amended complaint and recommended dismissal of each: 1) conditions of confinement, 2) deliberate indifference to medical needs, and 3) municipal liability (*id.*). The plaintiff filed objections to the report on September 21, 2022 (doc. 31). On April 26, 2023, the Honorable Joseph Dawson, III, United States District Judge, adopted the report as to the summary dismissal of the plaintiff's conditions of confinement and municipal liability claims but declined to adopt the report as to the recommendation to dismiss the deliberate indifference to medical needs claim (doc. 36). Specifically, Judge Dawson found that the plaintiff "at least alleges a cognizable claim for deliberate indifference by alleging a nine-month gap between injury and treatment" (*id.* at 5). Accordingly, on May 1, 2023, the undersigned authorized service of process and ordered the defendants to file an answer to the amended complaint or otherwise plead with respect to the plaintiff's deliberate indifference to medical needs claim only, as set forth in Judge Dawson's order (doc. 38 at 2).

After several service issues, the defendants filed an answer to the amended complaint on June 8, 2023 (doc. 60). Thereafter, on June 20, 2023, the plaintiff filed a notice of appeal (doc. 70). On March 1, 2024, the United States Court of Appeals for the Fourth Circuit issued an opinion noting that the plaintiff sought to appeal the district court's order allowing one claim to proceed and dismissing the plaintiff's other claims for failure to state a claim (doc. 81). The court found that the order the plaintiff sought to appeal was neither a final order nor an appealable interlocutory or collateral order, and, therefore, the court dismissed the appeal for lack of jurisdiction (*id.* at 2). The Fourth Circuit denied the plaintiff's petition for rehearing on April 9, 2024 (doc. 90) and issued the mandate and judgment dismissing the appeal on April 17, 2024 (doc. 91).

On May 8, 2024, the defendants filed a motion for summary judgment, which is now before the court for consideration (doc. 98). On May 9, 2024, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately (doc. 99). The plaintiff filed his response in opposition to the motion on May 22, 2024 (doc. 101), and the defendants filed a reply on June 19, 2024 (doc. 103). Accordingly, this matter is ripe for review.

## **FACTS PRESENTED**

With their motion, the defendants submitted the affidavit of defendant Stacy L. Smith, who is the Regional 2 Medical Director of the SCDC (doc. 98-2, Smith aff. ¶ 1). Dr. Smith attached to his affidavit the plaintiff's medical records for September 30, 2021, through June 2022 along with a timeline he created from reviewing the plaintiff's medical records (*id.* ¶¶ 3-4; doc. 98-3 at 5, timeline; doc. 98-3 at 7-32, med. records). Dr. Smith provided the following summary of the plaintiff's medical history during the applicable time period:

> 6. The [p]laintiff was processed through the [SCDC] at intake on or about September 14, 2021. This was an initial evaluation. His history and physical w[ere] completed on November 12, 2021. During that examination, he denied any prior medical problems or complaints. Specifically, it is noted that he denied any back pain, bone or joint symptoms, and/or neck stiffness. This assessment and documentation was done by Gregory Furness, P.A. According to the medical records, it appears that [the plaintiff] transferred to [MacDougall] on or about December 20, 2021. On December 30, 2021, [the plaintiff] first mentioned any reference to hand and shoulder pain noting that he wanted to sign up for "sick call." On January 11, 2022, [the plaintiff] was seen for a "sick call" visit, and he reported that he fell off of a ladder at Kirkland Correctional Institution, hurt his hand 4 to 5 months ago, and has "never come to sick call to be seen." He complained about a broken finger that happened months ago as well as neck and shoulder pain. He also noted a complaint of neck pain and shoulder pain from a motor vehicle accident prior to incarceration. He had denied any complaints at his admission physical and had several opportunities after that to have reported any alleged injury. I saw [the plaintiff] on January 11, 2022. An x-ray was taken of his hand on February 8, 2022, and the x-ray showed:
>
>> There is no visible fracture, subluxation, sclerotic or disruptive abnormality. The joint spaces appear intact. The soft tissues are within normal limits.
>
> Of note, the patient, "no showed" for 3 "sick call" appointments in a row to discuss the findings as to his hand x-ray and the possibility of a consult for the orthopedic clinic.
>
> 7. On March 21, 2022, a consult referral was made to the orthopedic clinic, and the first available appointment was June 6, 2022.
>
> 8. The medical records reflect that there was an orthopedic consult on June 6, 2022. At that appointment, there was no indicated treatment plan, but the [p]laintiff did receive a steroid injection to his left shoulder and recommendations included Mobic (7.5 mg.), Flexeril (5 mg.), physical therapy with a therapy band and one-month follow-up. Upon information and belief, [the plaintiff] reached his max out date before additional follow-up could be scheduled.

(Doc. 98-2, Smith aff. ¶¶ 6-8).

As indicated in Dr. Smith's affidavit, the plaintiff's medical records show the plaintiff denied back pain, bone/joint symptoms, and neck stiffness and his physical examination was normal on November 12, 2021, just six weeks following his alleged fall from his bed on September 30, 2021 (doc. 98-3 at 7-8). Further, when the plaintiff was seen for sick call on January 11, 2022, he complained that he hurt his hand four to five months prior and had "never come to sick call to be seen," but "now that dorm is on quarantine inmate is wanting to be treated" (*id.* at 13). At that time, there was no obvious deformity to the plaintiff's left hand, trace edema to the back of the left hand, and no sign of circulatory compromise (*id.*). The plaintiff was seen again on January 24, 2022, and was given Tylenol for his hand (*id.* at 15). It was noted that the doctor had ordered an x-ray of the plaintiff's hand, but "due to dorm being on quarantine," the x-ray had not yet been scheduled (*id.*). On January 28, 2022, it was noted that the plaintiff's radiology appointment was scheduled for February 8, 2022 (*id.* at 16-17). The x-ray on February 8th showed "no visible fracture, subluxation, sclerotic or destructive lesion or periosteal abnormality. The joint spaces appear intact. The soft tissues are within normal limits" (*id.* at 26). The impression was "Unremarkable three views left hand" (*id.*). The plaintiff was a no-show for sick calls on February 28, 2022; March 3, 2022; and March 7, 2022 (*id.* at 18-20). On March 21, 2022, the plaintiff was seen for a sick call and complained that he could not use his left hand because it was broken in a fall five to six months prior (*id.* at 22). Dr. Smith referred the plaintiff for an orthopedic consultation that same day (*id.* at 23), and the plaintiff was given Tylenol for pain (*id.*). On April 26, 2022, the plaintiff again requested renewal of the Tylenol prescription (*id.* at 24-25). The plaintiff was seen for an orthopedic consultation on June 6, 2022, and, as noted by Dr. Smith, the plaintiff received a steroid injection to his left shoulder, and recommendations included Mobic (7.5 mg.), Flexeril (5 mg.), physical therapy evaluation for shoulder strength/stretching, one-month followup, and a left shoulder x-ray before the next visit (*id.* at 27-30). A physical therapy note also dated June 6, 2022,

appears to indicate that the plaintiff was evaluated, and the plan was for the plaintiff to exercise twice per week for one hour with a blue band for three weeks (*id.* at 31).[1] At a sick call followup on June 7, 2022, the plaintiff was given ibuprofen 600 mg to take three times per day as needed (*id.* at 27).

In his response to the motion for summary judgment, the plaintiff contends that he has been in contact with a "Dr. McDermett," who is "more than able to come to court and represent" (doc. 101 at 2). He further contends that he possesses "the surgery tape"; he suffered for ten months and "that lady came in every Saturday to look at us"; Dr. Smith's affidavit is "totally guarded"; and that the undersigned "cancelled [his] insurance, tapped [his] phone and therefore no therapy!" (*id.*).

With his original complaint, the plaintiff submitted an inmate grievance form dated April 12, 2022, in which he complained regarding the September 30th accident and that he had dealt with pain of a broken hand and separated shoulder for six months before anyone acknowledged the accident (doc. 1-1 at 1). He stated that he had an x-ray on February 4, 2022, but he had not been given the results and he had not seen Dr. Smith since he had been at MacDougall (*id.*). He requested an MRI (*id.*). It was noted on the grievance that it was processed and returned to the plaintiff as it was a duplicate of one previously filed on March 18, 2022 (*id.*). The plaintiff attached to his amended complaint a "Physician's Transfer Note or Consultation," stating that Dr. Koon, who saw the plaintiff for the orthopaedic consultation, gave the plaintiff an injection in the left shoulder and recommended Flexeril and Mobic and that an x-ray of the left should be taken before the plaintiff's next visit (doc. 23-2 at 1). In addition, the plaintiff wrote the following on the note:

> 6/6/2022 Did not physically see Dr. Koon but a young lady Dr. to be added later. Looked at my shoulder, hand neck. I told her all of these were hurting and injured after 10 months still. Also seen physical therapist also to be named later. She took me

---

[1] The handwritten note is difficult to read (*see* doc. 98-3 at 31).

> through about 12 exercises and observed. Almost left without seeing her.

(*Id.*). He also attached to the amended complaint a request to staff member dated November 10, 2021, in which he requested a sick call, stating that his finger had "torn ligaments or tendons," and he could not "use it at all" (*id.* at 2). He sated that he "tried to get your staff to do it," and his finger had "[b]een like this since Saturday morning" (*id.*). The disposition stated that "medical [was] emailed [the plaintiff's] concerns" (*id*). The plaintiff also attached a Step 1 grievance form that he signed on March 18, 2022, and was received by SCDC on March 22, 2022, in which he stated that he "broke [his] hand at Kirkland in September and still no medical treatment" (*id.* at 3). The grievance was processed and returned because the plaintiff did not complete an appropriate informal resolution (*id.*). The plaintiff reached his "max out" date and was released from SCDC on or about August 1, 2022 (doc. 10).

## **APPLICABLE LAW AND ANALYSIS**

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

***Deliberate Indifference to Serious Medical Needs***

Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated. *See Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016). When a prison official demonstrates "deliberate indifference" to an inmate's serious medical needs, a constitutional violation occurs under the Eighth Amendment. *See id.*; *Estelle v. Gamble*, 429 U.S. 97, 101-06 (1976); *see Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022) ("Because adequate ... medical care is a basic condition of humane confinement, a prison official's deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.") (internal citations and quotation marks omitted). To state a claim for deliberate indifference to serious medical needs, a prisoner must show that he had a serious medical need and that officials knowingly disregarded that need and the substantial risk it posed. *King v. Rubenstein*, 825 F.3d 206, 218-20 (4th Cir. 2016); *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209-11 (4th Cir. 2017). The first component

requires an objectively "serious medical need" that has been "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Heyer*, 849 F.3d at 210 (citation omitted). The second subjective component requires a showing "that the defendant acted with deliberate indifference" to that medical need. *Id.* at 209-210. An official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks, but nevertheless disregarded them. *See Scinto*, 841 F.3d at 225-26.

Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. Rather, "the treatment given must be 'so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Hixson v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021) (quoting *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990)). Mere negligence, malpractice, or incorrect diagnosis is not actionable. *See Estelle*, 429 U.S. at 106. Moreover, "[a]n inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim." *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) (citation omitted).

"Under the applicable legal principles, a significant delay in the treatment of a serious medical condition may, in the proper circumstances, indicate an Eighth Amendment violation." *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008). However, the United States Court of Appeals for the Fourth Circuit recently explained that "mere delay" in medical treatment, without more, is not deliberate inference to a serious medical need. *Moskos v. Hardee*, 24 F. 4th 289, 298 (4th Cir. 2022). Rather, "the objective prong requires [a plaintiff] to show that the alleged delay . . . put him at 'substantial risk' of 'serious harm.'" *Id.* (quoting *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021)). *See also Evans v. S.L.R. Det. Ctr.*, C.A. No. 4:17-cv-2731-HMH-TER, 2019 WL 1026362, at *6 (D.S.C. Jan. 24, 2019) ("Intentionally delaying access to medical care demonstrates

9

deliberate indifference only if the delay results in some substantial harm."), *R&R adopted by* 2019 WL 1022141 (D.S.C. Mar. 4, 2019). "A commonplace medical delay such as that experienced in everyday life will only rarely suffice to constitute an Eighth Amendment violation, absent the unusual circumstances where the delay itself places the prisoner at 'substantial risk of serious harm,' such as where the prisoner's condition deteriorates markedly or the ailment is of an urgent nature." *Moskos*, 24 F.4th at 298.

Here, the defendants argue that the plaintiff cannot meet that the subjective component of his claim by showing that the defendants acted with deliberate indifference to the plaintiff's medical need (doc. 98-1 at 4-5). The undersigned agrees. Viewing the evidence in a light most favorable to the plaintiff, the evidence before the court can be summarized as follows: the plaintiff injured his hand, neck, and shoulder on September 30, 2021; on November 10, 2021, the plaintiff requested a sick call regarding his finger, which he said he could not use since the previous Saturday morning; the plaintiff was examined on November 12, 2021, and denied back pain, bone/joint symptoms, and neck stiffness, and his physical examination was normal; the plaintiff transferred to MacDougall on December 20, 2021, and he signed up for sick call on December 30, 2021; he was seen for sick call on January 11, 2022, at which time he reported his fall at Kirkland, and he was given pain medication and a wrap for his hand, and an x-ray was ordered the next day; the plaintiff was seen for sick call on January 24, 2022, and he was given more pain medication; it was noted that due to the dorm being on quarantine, the x-ray had not been scheduled; the plaintiff's hand was x-rayed on February 8, 2022, and the results were normal; the plaintiff was a "no show" for three sick call appointments in February and March 2022; on March 18, 2022, he signed a Step 1 grievance complaining that he had broken his hand months earlier and still had not received medical treatment; on March 21, 2022, the plaintiff was seen for a sick call and complained that he could not use his left hand as it was broken in a fall months earlier; the plaintiff was given pain medication, and Dr. Smith

10

referred the plaintiff for an orthopedic consultation that same day; on April 12, 2022, the plaintiff submitted a Step 1 grievance complaining that he had been injured the previous September and had an x-ray in February, but he had not been given the results and had not seen Dr. Smith since he had been at MacDougall; on April 26, 2022, the plaintiff requested renewal of pain medication, which he was given; on June 6, 2022, he was seen for an orthopedic consultation and received a left shoulder steroid injection and recommendations for medication, physical therapy evaluation, one-month followup, and a left-shoulder x-ray before the next visit; also on June 6, 2022, the plaintiff was evaluated by a physical therapist; and, at a sick call followup on June 7, 2022, the plaintiff was given pain medication to take three times per day as needed. The plaintiff was released from SCDC on or about August 1, 2022 (doc. 10).

The evidence before the court shows that shortly after the plaintiff requested to be seen for an injured finger, he was examined by a physician and denied any problems. Moreover, after his transfer to MacDougall and his report of his fall at Kirkland months prior, the plaintiff was regularly given medication when he requested it for pain, and an x-ray was immediately ordered by Dr. Smith, although due to the dorm being on quarantine, the x-ray was delayed by a month. There is absolutely no evidence before the court that either defendant in this case was responsible for that delay. While the x-ray was normal, due to the plaintiff's continued complaints, Dr. Smith made a referral for an orthopedic consultation, but the first available appointment was weeks away. Again, there is absolutely no evidence that this was anything more than "a commonplace medical delay such as that experienced in everyday life." *Moskos*, 24 F.4th at 298. Further, the plaintiff has failed to show that any delay in treatment "put him at 'substantial risk' of 'serious harm.'" *Id.* Moreover, mere negligence, malpractice, or incorrect diagnosis is not actionable, and the plaintiff's disagreement with the course of treatment provided will not support a valid Eighth

Amendment claim. Accordingly, summary judgment should be granted in favor of the defendants.

***Personal Liability and Respondeat Superior***

As noted above, the only claim authorized to go forward by Judge Dawson was the plaintiff's deliberate indifference to medical needs claim. The defendants further argue that the plaintiff's claim should be dismissed because the plaintiff has failed to show any personal involvement in his medical care by defendant Warden Wallace. The undersigned agrees. *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) ("To establish personal liability under § 1983 . . . the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights. That is, the official's own individual actions must have violated the Constitution. Importantly, mere knowledge of such a deprivation does not suffice." (internal citations, quotation marks, and alterations omitted)); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (noting liability will only lie in § 1983 actions where it is "affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights" (citation omitted)).

Moreover, to the extent the plaintiff alleges that Warden Wallace is vicariously liable by virtue of the actions of his subordinates, that claim also fails. Pure supervisory liability will not lie in Section 1983 actions. *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("The doctrine of respondeat superior has no application under this section." (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977))). Rather, to hold a supervisor liable for a constitutional injury inflicted by a subordinate under Section 1983, the plaintiff must show facts establishing the following elements: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the

supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The plaintiff has failed to produce evidence showing any of these required elements.

### *Qualified Immunity*

The defendants further argue they are entitled to qualified immunity (doc. 98-1 at 6). "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). When a qualified immunity defense is raised, the courts apply a two-part test. First, the court must determine whether the facts viewed in the plaintiff's favor make out a violation of one's constitutional rights, and second, whether the violated right was clearly established at that time. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Pearson v. Callahan*, 555 U.S. 233, 231 (2009)). The Fourth Circuit employs a split burden of proof for the qualified immunity defense. The plaintiff bears the burden of proving the first prong, and the [officer] bears the burden on the second prong. *Stanton*, 25 F.4th at 233 (citing *Henry v. Purnell*, 501 F.3d 374, 377-78 & n.4 (4th Cir. 2007)). The plaintiff does not provide a substantive response to this argument. In any event, the undersigned has previously determined that the plaintiff has failed to establish any constitutional violation on the part of either of the defendants. Accordingly, the undersigned recommends finding that the defendants are entitled to qualified immunity.

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the defendants' motion for summary judgment (doc. 98) should be granted.

IT IS SO RECOMMENDED.

| | |
|---|---|
| August 30, 2024 | s/Kevin F. McDonald |
| Greenville, South Carolina | United States Magistrate Judge |

***The attention of the parties is directed to the important notice on the following page.***

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).