IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| William Baker, | ) | Case No.: 6:22-cv-2073-JD-KFM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| Dr. Stacy Smith and Warden Wallace, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court with the Report and Recommendation ("Report") of United States Magistrate Judge Kevin F. McDonald (DE 105), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) of the District of South Carolina regarding Defendants Dr. Stacy Smith ("Dr. Smith") and Warden Wallace's ("Wallace") (collectively "Defendants") Motion for Summary Judgment (DE 98).[1]

**A. Background**

The Report sets forth the relevant facts and legal standards, which the Court incorporates without a complete recitation. In any event, the Court provides this summary as a brief background.

---

[1]     The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1.  Procedural History

Plaintiff William Baker ("Plaintiff" or "Baker"), proceeding *pro se* and *in forma pauperis*, sued Defendants under 42 U.S.C. § 1983, alleging violations of his constitutional rights stemming from injuries he sustained after falling from his bunk while incarcerated at Kirkland Correctional Institution ("Kirkland").   (DE 23.) According to the Report, Plaintiff filed his original complaint on June 30, 2022, while he was a state prisoner in the custody of the South Carolina Department of Corrections ("SCDC") housed at MacDougall Correctional Institution ("MacDougall") (DE 1.)

On September 2, 2022, the Magistrate Judge issued a report and recommendation recommending this Court dismiss Baker's amended complaint with prejudice, without leave to further amend, and without issuance and service of process (DE 28).  The report addressed three potential claims gleaned from Baker's amended complaint and recommended dismissal of each: 1) conditions of confinement, 2) deliberate indifference to medical needs, and 3) municipal liability (*id.*).  Baker objected to the report (DE 31), and on April 26, 2023, this Court adopted the report as to the summary dismissal of Plaintiff's conditions of confinement and municipal liability claims but declined to adopt the report as to the recommendation to dismiss the deliberate indifference to medical needs claim (DE 36).

Then, on June 20, 2023, Baker filed a notice of appeal (DE 70).  On March 1, 2024, the United States Court of Appeals for the Fourth Circuit issued an opinion (DE 81) finding that the order Baker sought to appeal was neither a final order nor

an appealable interlocutory or collateral order, so the Fourth Circuit dismissed the appeal for lack of jurisdiction (*id.* at 2).  The Fourth Circuit denied Baker's petition for rehearing on April 9, 2024 (DE 90), and issued the mandate and judgment dismissing the appeal on April 17, 2024 (DE 91).

On May 8, 2024, Defendants moved for summary judgment on three grounds: 1) Baker's Complaint does not give rise to a constitutional claim for deliberate indifference to a serious medical need, 2) liability under section 1983 cannot be based on respondeat superior, and 3) Defendants have a right to qualified immunity.  (DE 98.)  On May 9, 2024, under *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Magistrate Judge advised Baker of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately.  (DE 99.)  Baker opposed the motion on May 22, 2024 (DE 101), and Defendants replied on June 19, 2024 (DE 103).

2.  Facts

Baker alleges that on September 30, 2021, he fell while climbing into his bed, the top bed of three, and injured his hand, neck, and shoulder (DE 1 at 6-7).  He alleged that when he "got to medical that day, Doctor Smith . . . had the Nurse x-ray [his] hand side-ways one time [and] ordered pills for [him] and sent [him] back" (*id.* at 7).  Baker alleges that he did not receive medical treatment for the fall until June 2022 when he had an x-ray, steroid shot, and "exercise sheet" (DE 23-1 at 2-3; DE 23 at 10).  Baker also claims that the nurses at that time stated they "found no breakage and pretty much wrote [him] off" (DE 23-1 at 2).  Baker alleges that because of the

Defendants' actions, he is permanently disabled and that he suffered a broken hand and "required resetting of shoulder and neck brace and reset hand" (DE 23 at 6, 10).

Dr. Smith is the Regional 2 Medical Director of the SCDC (DE 98-2, Smith aff. ¶ 1). Dr. Smith attached to his affidavit the Plaintiff's medical records for September 30, 2021, through June 2022, along with a timeline he created from reviewing the Plaintiff's medical records (*id.* ¶¶ 3-4; DE 98-3 at 5, timeline; DE 98-3 at 7-32, med. records). Dr. Smith summarizes Baker's medical history as follows:

> 6.      The [p]laintiff was processed through the [SCDC] at intake on or about September 14, 2021. This was an initial evaluation. His history and physical w[ere] completed on November 12, 2021. During that examination, he denied any prior medical problems or complaints. Specifically, it is noted that he denied any back pain, bone or joint symptoms, and/or neck stiffness. This assessment and documentation was done by Gregory Furness, P.A. According to the medical records, it appears that [the plaintiff] transferred to [MacDougall] on or about December 20, 2021. On December 30, 2021, [the plaintiff] first mentioned any reference to hand and shoulder pain noting that he wanted to sign up for "sick call." On January 11, 2022, [the plaintiff] was seen for a 'sick call' visit, and he reported that he fell off of a ladder at Kirkland Correctional Institution, hurt his hand 4 to 5 months ago, and has 'never come to sick call to be seen.' He complained about a broken finger that happened months ago as well as neck and shoulder pain. He also noted a complaint of neck pain and shoulder pain from a motor vehicle accident prior to incarceration. He had denied any complaints at his admission physical and had several opportunities after that to have reported any alleged injury. I saw [the plaintiff] on January 11, 2022. An x-ray was taken of his hand on February 8, 2022, and the x-ray showed:

>> There is no visible fracture, subluxation, sclerotic or disruptive abnormality. The joint spaces appear intact. The soft tissues are within normal limits.

> Of note, the patient, 'no showed' for 3 'sick call' appointments in a row to discuss the findings as to his hand x-ray and the possibility of a consult for the orthopedic clinic.

4

7.    On March 21, 2022, a consult referral was made to the orthopedic clinic, and the first available appointment was June 6, 2022.

8.    The medical records reflect that there was an orthopedic consult on June 6, 2022. At that appointment, there was no indicated treatment plan, but the [p]laintiff did receive a steroid injection to his left shoulder and recommendations included Mobic (7.5 mg.), Flexeril (5 mg.), physical therapy with a therapy band and one-month follow-up. Upon information and belief, [the plaintiff] reached his max out date before additional follow-up could be scheduled.

(DE 98-2, Smith aff. ¶¶ 6-8).  A physical therapy note also dated June 6, 2022, appears to show that Plaintiff was evaluated, and the plan was for Plaintiff to exercise twice per week for one hour with a blue band for three weeks (*id.* at 31).[2]  At a sick call follow-up on June 7, 2022, Plaintiff was given ibuprofen 600 mg to take three times per day as needed (*id.* at 27).

According to the Report, in response to Defendants' motion for summary judgment,

the plaintiff contends that he has been in contact with a 'Dr. McDermett,' who is 'more than able to come to court and represent' (doc. 101 at 2). He further contends that he possesses 'the surgery tape'; he suffered for ten months and 'that lady came in every Saturday to look at us'; Dr. Smith's affidavit is 'totally guarded'; and that the undersigned 'cancelled [his] insurance, tapped [his] phone and therefore no therapy!' (*id.*).

(DE 105 at 6.)

## B. Report and Recommendation

On August 30, 2024, the Magistrate Judge issued the Report recommending that Defendants' motion for summary judgment be granted.  The Report found as to Baker's deliberate indifference claim:

---

[2]    The handwritten note is difficult to read (*see* DE 98-3 at 31).

The evidence before the court shows that shortly after the plaintiff requested to be seen for an injured finger, he was examined by a physician and denied any problems. Moreover, after his transfer to MacDougall and his report of his fall at Kirkland months prior, the plaintiff was regularly given medication when he requested it for pain, and an x-ray was immediately ordered by Dr. Smith, although due to the dorm being on quarantine, the x-ray was delayed by a month. There is absolutely no evidence before the court that either defendant in this case was responsible for that delay.

(DE 105 at 11.) As for Barker's section 1983 claim, the Report found:

[Baker] has failed to show any personal involvement in his medical care by defendant Warden Wallace. . . . *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) ("To establish personal liability under § 1983 . . . the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights. That is, the official's own individual actions must have violated the Constitution. Importantly, mere knowledge of such a deprivation does not suffice." (internal citations, quotation marks, and alterations omitted)); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (noting liability will only lie in § 1983 actions where it is "affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights" (citation omitted)).

(DE 105 at 12.) Lastly, as for Defendants qualified immunity defense, the Report found:

When a qualified immunity defense is raised, the courts apply a two-part test. First, the court must determine whether the facts viewed in the plaintiff's favor make out a violation of one's constitutional rights, and second, whether the violated right was clearly established at that time. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022) (citing *Pearson v. Callahan*, 555 U.S. 233, 231 (2009)). The Fourth Circuit employs a split burden of proof for the qualified immunity defense. The plaintiff bears the burden of proving the first prong, and the [officer] bears the burden on the second prong. *Stanton*, 25 F.4th at 233 (citing *Henry v. Purnell*, 501 F.3d 374, 377-78 & n.4 (4th Cir. 2007)). The plaintiff does not provide a substantive response to this argument.

(DE 105 at 13.) On June 10, 2024, Plaintiff objected to the Report.

6

### C. Legal Standard

To be actionable, objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. *See United States v. Schronce*, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (2005) (citing *Thomas v. Arn*, 474 U.S. 140, 147 (1985) (emphasis added)). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this Court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

### D. Plaintiff's Objection

Baker offers a one-sentence objection stating: "[a]ll of your allegations are false and untrue (Id at 5 is good) (DOC 38 at 2 is good <u>MORE to come</u>[.]" (DE 107.) Nevertheless, once the movant has made this threshold demonstration, to survive the motion for summary judgment, under Rule 56(e), the nonmoving party must "go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Under this standard, "the mere existence of a scintilla of evidence" in favor of the non-

movant's position is insufficient to withstand the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom v. Hosp. Ventures LLC,* 980 F.3d 1027, 1037 (4th Cir. 2020). Baker's objection does not satisfy Rule 56(e). Thus, the Court overrules the same.

### E. Conclusion

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report (DE 105) and incorporates it here by reference.

It is, therefore, **ORDERED** that Defendants' motion for summary judgment (DE 98) is granted.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
November 5, 2024

**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this order within thirty (30) days from this date under Rules 3 and 4 of the Federal Rules of Appellate Procedure.